**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-6059**

---

DAWN LUSK,

       Plaintiff - Appellant,

v.

CHRIS MERCHANT, in his individual capacity; APRIL PEPPERS, in her individual capacity; THE UNITED STATES OF AMERICA,

       Defendants - Appellees,

and

BRADLEY NORTON, in his individual capacity,

       Defendant.

---

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Donald C. Coggins, Jr., District Judge.  (8:21-cv-01976-DCC)

---

Argued:  March 18, 2026                Decided:  July 14, 2026

---

Before GREGORY, WYNN, and BERNER, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Gregory and Judge Berner joined.

---

**ARGUED:**  Joshua Thomas Hawkins, HAWKINS & JEDZINIAK, LLC, Greenville, South Carolina, for Appellant.  Urja Mittal, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Helena LeeAnn Jedziniak, HAWKINS & JEDZINIAK, LLC, Greenville, South Carolina, for Appellant. Brian M. Boynton, Principal Deputy Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellees.

———————

WYNN, Circuit Judge:

The United States may be sued only when Congress has unequivocally waived sovereign immunity. And where Congress has not done so, we must dismiss the action.

Here, Plaintiff Dawn Lusk alleges that a United States Postal Service employee brutally assaulted her, and the federal government maintains that the employee was acting within the scope of her employment at the time of the assault.

Ordinarily, an employer whose employee commits an assault while acting within the scope of their employment would face liability for that conduct. But we conclude that Lusk's claim is largely foreclosed by governing sovereign-immunity principles and the federal statutes embodying those principles.

Nevertheless, the Supreme Court has preserved plaintiffs' abilities to pursue claims that would otherwise be barred by federal law in one narrow circumstance: where another government employee owed a duty to the plaintiff that did not arise from the employment relationship with the direct tortfeasor. We conclude that that exception applies here to save one piece of Lusk's complaint.

Accordingly, we reverse and remand the district court's dismissal of Lusk's action as to that single, narrow segment of her complaint. We otherwise affirm.

I.

A.

The following facts are taken from the operative, amended complaint and are assumed to be true for purposes of this appeal. *See Prince v. Sears Holdings Corp.*, 848 F.3d 173, 176 (4th Cir. 2017).

Lusk is a resident of Salem, South Carolina. At the time of the events alleged in the complaint, she frequently visited the Salem Post Office, where Chris Merchant served as Postmaster and April Peppers worked as an employee. Peppers had reportedly been the subject of multiple citizen complaints, as well as of a report "for aggressive behavior," before the events described in the complaint. J.A. 78.[1]

On March 6, 2020, Lusk visited the Salem Post Office to collect her mail. She discovered that multiple items of mail she expected to receive were not in her mailbox. When she asked (unspecified) employees for help, they chose to "chat and . . . listen to music instead of assisting" her. J.A. 77. When she suggested they turn the music down, they "laughed at [her] and turned the volume up in an attempt to disrespect and demean" her. *Id.*

The Postmaster, Merchant, "then opened the double-locked doors in order for" Peppers "to enter the customer's area of the post office and to confront" Lusk. *Id.* "After going through the double-locked doors, Peppers shouted profanity at [Lusk] before physically attacking her," including "str[iking] [her] in the head, knock[ing] [her] to the ground, and kick[ing] [her] while she was lying on the ground." *Id.*

Lusk asked Merchant for help, but he "refused to call for help" or "to allow [Lusk] to use a telephone to call for help herself." J.A. 78. Instead, he "instructed [her] to leave the [P]ost [O]ffice, grabbing [her] by her ankles and holding her as if he were going to drag her out of the [P]ost [O]ffice while she was still on the ground." *Id.* "As a result of the

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

attack, [Lusk] sustained serious physical and psychological injuries and incurred expenses related to medical treatment."[2] J.A. 79.

B.

Lusk filed suit in South Carolina state court in 2021, and the defendants timely removed the suit to federal court. Lusk filed an amended complaint the following year. As relevant here,[3] Lusk asserted four claims, alleging (1) common-law liability for negligence, gross negligence, and recklessness pursuant to the Federal Tort Claims Act ("FTCA"); (2) negligent hiring, supervision, and retention, also pursuant to the FTCA; (3) constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and (4) violation of the Freedom of Information Act ("FOIA"), specifically, that the Postal Service refused to make requested documents available and "attempt[ed] to charge [Lusk] an estimated minimum of $468,048" to produce them. J.A. 79.

Lusk brought her amended complaint against Peppers and Merchant in their individual capacities, as well as against the federal government. However, the government substituted itself for Peppers and Merchant under 28 U.S.C. § 2679. It then moved to dismiss the complaint.

The magistrate judge issued a report and recommendation ("R&R") recommending

---

[2] The complaint does not elaborate on Lusk's injuries, but she represented in a filing below that "Peppers punched [her] with such force that it knocked a dental bridge loose in [her] mouth." J.A. 136.

[3] Lusk also sued the Town of Salem and its attorney, but those claims have been settled and are not at issue in this appeal.

5

that the motion to dismiss be granted. Lusk objected, but the district court overruled her objection and adopted the R&R. *Lusk v. Norton*, No. 8:21-cv-1976, 2022 WL 17741378, at *7 (D.S.C. Dec. 16, 2022). Lusk timely appealed.

## II.

Lusk challenges the district court's dismissal of the four claims identified above for failure to state a claim.[4] We review such a dismissal de novo. *In re Gardasil Prods. Liab. Litig.*, 151 F.4th 178, 189 n.4 (4th Cir. 2025).

## III.

We begin with the claim that requires the most analysis on appeal: Lusk's FTCA claim for negligence, gross negligence, and recklessness, which was based on Peppers's assault of her and Merchant's related actions. The district court dismissed that claim as barred by sovereign immunity. We reverse and remand as to one segment of the claim against Merchant. We otherwise affirm.

## A.

"The United States enjoys sovereign immunity and cannot be sued without its consent." *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 394 (2026). As a government agency, the Postal Service likewise "enjoys federal sovereign immunity absent a waiver," which

---

[4] The government moved to dismiss the complaint under both Rule 12(b)(1) and 12(b)(6), and neither the R&R nor the district court opinion specified under which Rule dismissal took place. The question of how to treat dismissals related to sovereign immunity gets quite knotty. *E.g.*, *Evans v. United States*, 105 F.4th 606, 612–16 (4th Cir. 2024); *Albert v. Lierman*, 152 F.4th 554, 563 n.9 (4th Cir. 2025). Here, however, Lusk represents on appeal that she understands the dismissal to have been under Rule 12(b)(6). We proceed under that understanding but note that dismissal on the basis of sovereign immunity "should normally be without prejudice." *Albert*, 152 F.4th at 564 n.9 (cleaned up).

6

means that "recourse against [it] in the form of lawsuits for money damages is limited." *Id.* at 395 (cleaned up).

Congress granted one important, if "limited," waiver of sovereign immunity when it enacted the FTCA. *Id.* (cleaned up). Generally speaking, the FTCA makes the federal government "liable" for "tort claims" "in the same manner and to the same extent as a private individual under like circumstances."[5] 28 U.S.C. § 2674; *accord id.* § 1346(b)(1).

If that were the whole story, that would seem to be good news for Lusk. After all, in South Carolina, "[t]he doctrine of respondeat superior provides that the employer . . . is called to answer for the tortious acts of his" employee "when those acts occur in the course and scope of the employee's employment." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008). And here, the federal government has affirmatively represented—indeed, has certified—that Peppers and Merchant were "acting within the scope of their employment at the time of the incident alleged in the complaint." J.A. 32.

But "[a]ll waivers of sovereign immunity must be strictly construed in favor of the sovereign," so "it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to [her] particular claim." *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005) (cleaned up).

Importantly, the FTCA cabins its waiver of sovereign immunity through thirteen

---

[5] Under 28 U.S.C. § 1346(b)(1), an action under the FTCA may only be maintained if "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Thus, "the underlying cause of action in an FTCA claim is derived from the applicable state law." *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009).

"exceptions that claw back the government's immunity in certain circumstances." *Martin v. United States*, 605 U.S. 395, 400 (2025). And crucially for this case, the FTCA does not waive sovereign immunity for "[a]ny claim arising out of" eleven specified torts, including "assault" and "battery."[6] 28 U.S.C. § 2680(h). "This is known as the intentional tort exception."[7] *Evans v. United States*, 105 F.4th 606, 612 (4th Cir. 2024).

## B.

We agree with the district court that the intentional tort exception applies to bar Lusk's FTCA claim against Peppers for negligence, gross negligence, and recklessness.

It is true that Lusk did not explicitly assert a claim for assault or battery. But we

---

[6] This exception is itself subject to an exception, which the Supreme Court has termed the "law enforcement proviso." *Martin*, 605 U.S. at 401 (quoting *Millbrook v. United States*, 569 U.S. 50, 55 (2013)). "That proviso countermands the exception with respect to six intentional torts," including assault and battery, if committed "by 'investigative or law enforcement officers.' So if a plaintiff alleges that a federal law enforcement officer committed one or more of those six torts, the proviso will ensure those claims survive an encounter with the intentional-tort exception." *Id.* (citation omitted) (quoting 28 U.S.C. § 2680(h)).

For the first time at oral argument, Lusk suggested that the law enforcement proviso might apply here. Oral Arg. at 6:07–7:50, https://www.ca4.uscourts.gov/OAarchive/mp3/23-6059-20260318.mp3. But "we do not consider on appeal issues raised for the first time at oral argument." *United States v. Walton*, 145 F.4th 476, 489 (4th Cir. 2025) (cleaned up), *cert. denied*, 146 S. Ct. 1461 (U.S. Jan. 12, 2026).

[7] "As the Supreme Court has explained, [this] shorthand label is mostly but not entirely accurate: The provision 'does not remove from the FTCA's waiver all intentional torts, *e.g.*, conversion and trespass, and it encompasses certain torts, *e.g.*, misrepresentation, that may arise out of negligent conduct.'" *Billups v. United States*, 854 F. App'x 514, 516 n.2 (4th Cir. 2021) (unpublished but orally argued) (quoting *Levin v. United States*, 568 U.S. 503, 507 n.1 (2013)). Perhaps for that reason, a few courts have used the term "enumerated torts exception," as the government does here. *E.g.*, *Tigano v. United States*, 527 F. Supp. 3d 232, 248 (E.D.N.Y. 2021); *see* Response Br. at 3. Because "intentional tort exception" is the phrase overwhelmingly used in the case law, however, we employ that term here.

have cautioned that "[i]f the 'gravamen' of [a] claim is battery, then 'artful[ly] pleading' it as negligence will not take it outside of § 2680(h)'s ambit." *Billups v. United States*, 854 F. App'x 514, 517 (4th Cir. 2021) (unpublished but orally argued) (quoting *Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991)); *accord Popovic v. United States*, 175 F.3d 1015, 1999 WL 228243, at *3 (4th Cir. 1999) (per curiam) (unpublished, orally argued table decision) ("It is well settled that the form of the tort does not control; we must look to the substance of the conduct of which the plaintiff complains.").

Lusk alleges that Peppers went through double-locked doors "to confront" her, "shouted profanity at [her] before physically attacking her," "struck [her] in the head, knocked [her] to the ground, . . . kicked [her] while she was lying on the ground," and "beat[] and kick[ed] [her]." J.A. 77–78. This claim sounds in assault and battery, even if Lusk did not plead it that way.

Lusk contends that it was premature for the district court to apply the intentional tort exception because, at the motion-to-dismiss stage, it is unclear "whether Peppers had the requisite mental intent to commit the torts of assault or battery" because Lusk "did not plead causes of action for intentional acts." Opening Br. at 9. But she does not explain how the allegations set forth above could be read to allege anything other than intentional behavior by Peppers. *See Billups*, 854 F. App'x at 516 ("Billups alleged only intentional actions, taken to violate the legally protected interest of Billups in his person, bringing the claim into the heartland of battery." (cleaned up)).

And, in any event, to the extent Lusk means to argue that a claim for assault or battery would have failed, "whether a claim 'arises out of' a tort listed in § 2680(h) does

9

not turn on whether a plaintiff could succeed under that theory" because "we ask not whether [the plaintiff] can recover under a battery theory, but rather whether the 'gravamen' of [her] claim sounds in battery." *Id.* at 518; *accord Popovic*, 175 F.3d 1015, 1999 WL 228243, at *3. Lusk's claim against Peppers plainly does.

C.

That leaves Merchant.

As with Peppers, the intentional tort exception applies to any of Lusk's allegations against Merchant that sound in assault or battery. *E.g.*, J.A. 78 (alleging that Merchant "grabb[ed]" Lusk "by her ankles").

There remains, however, the question of negligence. In *Sheridan v. United States*, the Supreme Court recognized that "in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Sheridan v. United States*, 487 U.S. 392, 398 (1988). Lusk invokes *Sheridan* here, arguing that "Merchant negligently created the risk of harm to [Lusk] when he unlocked the double-locked doors to allow Peppers to confront [her]." Opening Br. at 11. We agree and therefore reverse and remand for further proceedings as to this narrow slice of Lusk's complaint.

*Sheridan* "established that the government can only be held liable for a federal employee's negligence that results in a foreseeable assault or battery where the basis for imposing government liability is independent of the intentional tortfeasor's federal employment." *Evans*, 105 F.4th at 611. Put another way, if the government owed some duty to the plaintiff such that its employee's negligence would make it liable to the plaintiff

10

regardless of the employment status of the intentional tortfeasor, the claim can move forward despite § 2680(h). *Sheridan*, 487 U.S. at 401.

Still, we have clarified that "a negligent supervision claim" remains "barred by the intentional tort exception." *Sheridan v. United States*, 969 F.2d 72, 75 (4th Cir. 1992); *accord Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995). So, to avoid the application of § 2680(h) to a claim alleging that a federal employee's negligence allowed another tortfeasor to commit an assault or battery, "the government's ability (i.e., legal duty) to control [the] tortfeasor must be independent of the tortfeasor's status as a government employee." *Durden v. United States*, 736 F.3d 296, 309 (4th Cir. 2013).

This means that the question before us is whether Merchant owed a duty of care to Lusk independent of Peppers's employment status. In other words, if Peppers had been just another member of the public, would Merchant have owed a duty of care to Lusk that would allow him to be held liable for creating the circumstances in which Peppers could attack Lusk, or for failing to seek medical assistance afterward?

Importantly, in considering this counterfactual, we can assume that Merchant still had knowledge of Peppers's alleged violent tendencies. *See* J.A. 78 (complaint alleging that "Merchant knew or should have known that Peppers was going to verbally and physically attack" Lusk because "Peppers was reported months before the events described [in the complaint] for aggressive behavior," with complaints about her coming from "[m]ultiple citizens," so "the Postal Service knew of Peppers'[s] dangerous propensities"). We have previously clarified that, while the government's duty to *control* the tortfeasor must arise independently of the tortfeasor's employment status, "*knowledge* of the

11

tortfeasor's propensity for violence or criminal history gained as a result of such status does not, per se, nullify an FTCA claim." *Durden*, 736 F.3d at 309 (emphasis added).

We assess whether an independent duty existed by reference to South Carolina law. *See Evans*, 105 F.4th at 616 ("The United States may only be held liable for negligence under the FTCA if an individual could be held liable for the same actions under the law of the state where the alleged negligence occurred."). The Supreme Court of South Carolina has held that, "[i]n a negligence action, a plaintiff must show that (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). Thus, "[t]he court must determine, as a matter of law, whether the law recognizes a particular duty." *Id.*

"Under South Carolina common law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger," with five exceptions: "(1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant." *Id.* Additionally, "[a]n affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Id.* at 656–57. Finally, "it has long been the law that one who assumes to act, even though under no obligation to do so, thereby becomes obligated to act with due care." *Id.* at 657.

12

Lusk argues that a duty arises here from several sources: that Merchant negligently created the risk, that various policies imposed duties, and that he assumed a duty to act. We think that, at minimum, the first of these arguments sufficiently points to allegations that, if true, would allow Merchant to be held liable via the *Sheridan* exception.[8]

Lusk's complaint alleges that Merchant "opened the double-locked doors in order for" Peppers "to confront" Lusk even though he "knew or should have known that Peppers was going to verbally and physically attack" Lusk, meaning that he "facilitated a situation where Peppers was virtually certain to attack" her. J.A. 77–78. It implies that, despite creating this situation, Merchant failed to intervene. And it alleges that, despite Lusk's pleas for assistance, Merchant "refused to call for help," "refused to allow [Lusk] to use a telephone to call for help herself," and "acted to conceal the event." J.A. 78.

Those allegations fit comfortably within the exception, under South Carolina law, that applies "where the defendant negligently or intentionally creates the risk." *Faile v. S.C. Dep't of Juv. Just.*, 566 S.E.2d 536, 546 (S.C. 2002); *see id.* at 546 n.8 (first citing *Montgomery v. Nat'l Convoy & Trucking Co.*, 195 S.E. 247 (S.C. 1938); and then citing Restatement (Second) of Torts §§ 321–22 (1965)); *cf. Edwards v. Lexington Cnty. Sheriff's Dep't*, 688 S.E.2d 125, 130 (S.C. 2010) (concluding defendants owed plaintiff a duty based on "special circumstances" where they "created a situation in which it was foreseeable that [the tortfeasor] would harm [the plaintiff]"). When that exception applies, the defendant

---

[8] We therefore have no occasion to address Lusk's arguments regarding a duty arising from policy or from assumption of that duty. The parties are free to make further arguments to the district court on those matters.

owes a duty "of due care" to the plaintiff. *Edwards*, 688 S.E.2d at 130; *accord Madison*, 638 S.E.2d at 658 (describing the duty as one of "reasonable care"). While the defendant is not "under a duty to guarantee [the plaintiff's] safety with absolute certainty," *Edwards*, 688 S.E.2d at 130, the defendant must take steps to "control the conduct of [the tortfeasor] or to warn a . . . potential victim of danger," *Madison*, 638 S.E.2d at 656. Yet, according to the complaint, Merchant failed to do so here.

Because Lusk has pointed to at least one "legal duty" owed by Merchant to Lusk that is "independent of [Peppers's] status as a government employee," she can take advantage of the narrow scope of the *Sheridan* exception for that aspect of her claim. *Durden*, 736 F.3d at 309. In all other respects, however, the district court correctly concluded that § 2680(h) bars Lusk from pursuing her first FTCA claim against the Postal Service.

## IV.

Lusk also appeals the district court's dismissal of her second FTCA claim, her *Bivens* claim, and her FOIA claim. These portions of her appeal are easily dispatched.

First, Lusk appeals the dismissal of her FTCA claim for negligent hiring, supervision, and retention. The magistrate judge recommended rejecting this claim based in part on the FTCA's discretionary function exception. *See* 28 U.S.C. § 2680(a) (providing that the FTCA does not waive sovereign immunity for "[a]ny claim based upon . . . the exercise or performance" of "a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"). The district court adopted that recommendation. *Lusk*, 2022 WL 17741378, at *3. We

14

agree.[9]

Our prior decision in *Suter v. United States* "conclude[d]" that the plaintiffs' "claim that the FBI negligently hired and supervised [an undercover agent] [was] barred by the discretionary function exception" because "[c]ourts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions." *Suter v. United States*, 441 F.3d 306, 312 n.6 (4th Cir. 2006) (first citing *Nurse v. United States*, 226 F.3d 996, 1001–02 (9th Cir. 2000); and then citing *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)); *accord LeRose v. United States*, 285 F. App'x 93, 97 (4th Cir. 2008) (unpublished but orally argued).

To be sure, we have since held—albeit in unpublished authority—that *Suter* does not "categorically bar negligent hiring and supervision claims absent further analysis" because "if a policy, statute, or regulation mandates a course of action, the discretionary function exception does not apply." *Lins v. United States*, 847 F. App'x 159, 164–65 (4th Cir. 2021) (per curiam) (unpublished but orally argued). But Lusk did not provide the district court with reasons to deviate from *Suter*'s broad statement under the circumstances of this case. To the contrary, while she nominally objected to the R&R's citation to the discretionary function exception as a reason to reject this claim, her analysis stated only that she "acknowledge[d] that [*Suter*] has ruled that negligent hiring claims fall within a FTCA exception." J.A. 188; *see Lusk*, 2022 WL 17741378, at *3 (district court

---

[9] Accordingly, we do not reach the alternative conclusion of the magistrate judge and district court that this claim is also barred by the intentional tort exception. *See* J.A. 172; *Lusk*, 2022 WL 17741378, at *3.

"question[ing] whether [Lusk] ha[d] specifically objected to this recommendation"). Lusk has therefore waived the ability to further pursue this claim on appeal. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 103 (4th Cir. 2020).

Second, Lusk sought relief under *Bivens* for violations of her Fourth Amendment rights.[10] On appeal, she argues that this case directly mirrors *Bivens* and thus should be allowed to proceed. *See* Opening Br. at 22 ("[Lusk] is seeking the same relief (monetary damages) for the same harm (violation of her Fourth Amendment right to be secure in her person) perpetrated by the same actor (a government official acting under the color of state law) as the *Bivens*[] plaintiff.").

But the Supreme Court has made clear that "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up). And Lusk does not sufficiently grapple with the fact that, on multiple occasions, the Supreme Court and this Court have refused to extend *Bivens* even to cases that—like *Bivens*, and unlike this case— involved excessive force by law enforcement officers. *E.g.*, *id.* at 495 (refusing to extend *Bivens* where the plaintiff alleged a physical assault by a Border Patrol agent, even though *Bivens* and *Egbert* "involve[d] similar allegations of excessive force and thus arguably present[ed] almost parallel circumstances," because such "superficial similarities" were "not enough to support the judicial creation of a cause of action" (cleaned up)); *Orellana v. Godec*, 145 F.4th 516, 519 (4th Cir. 2025) (refusing to extend *Bivens* where the plaintiff

---

[10] Her complaint also cited the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment, but she does not pursue those claims on appeal.

"suffered serious injuries when a tactical canine bit her leg as a U.S. Marshals fugitive task force executed an arrest warrant for her boyfriend"). So we affirm the dismissal of that claim.

Finally, Lusk appeals the dismissal of her FOIA claim. "Ordinarily, before proceeding to federal court, a FOIA requester must exhaust remedies available through FOIA's administrative process." *Louise Trauma Ctr. LLC v. U.S. Citizenship & Immigr. Servs.*, 147 F.4th 495, 499 (4th Cir. 2025). The magistrate judge and district court concluded that Lusk failed to appeal or otherwise administratively dispute the Postal Service's fee determination and thus had not exhausted her administrative remedies. Lusk doesn't appear to dispute that conclusion on appeal.

Instead, her only argument before this Court is that exhaustion is not jurisdictional in the FOIA context. That is true. *Id.* at 499 n.1. But that doesn't excuse her from having to satisfy the exhaustion requirement. The Supreme Court has explained that, even when a statutory exhaustion requirement is "not a jurisdictional prescription delineating the adjudicatory authority of courts," it is still "mandatory if timely raised," as it was here. *Fort Bend County v. Davis*, 587 U.S. 541, 543, 551 (2019); *see* J.A. 120–22 (government raising failure to exhaust in its motion to dismiss). So we affirm the dismissal of that claim.

V.

Before closing, we pause to note the concededly harsh results mandated by federal law in this case. That's because of how the FTCA and *Bivens* jurisprudence intersect with another federal statute, the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"). The combination of these sources of law means that, aside

17

from the narrow claim against Merchant that she may pursue as described above, Lusk is not just barred from suing the Postal Service itself—she also cannot pursue her claims against Peppers and Merchant, even in their personal capacities, and even in state court.

The Westfall Act mandates that "[t]he remedy against the United States provided by" the FTCA for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1). This exclusivity provision does not apply to claims brought for constitutional violations under *Bivens* or for violations of federal statutes that "otherwise authorize[]" a claim against a federal employee. *Id.* § 2679(b)(2); *see United States v. Smith*, 499 U.S. 160, 166–67 (1991). But it does "foreclose[] common-law claims for damages against federal officials." *Tanzin v. Tanvir*, 592 U.S. 43, 49 (2020). And it "makes the FTCA the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability." *Smith*, 499 U.S. at 166.

The Westfall Act further provides that, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the lawsuit is to be "deemed an action against the United States," which "shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The Attorney General has delegated this certification authority to the United States Attorney for the relevant district. *See* 28 C.F.R. § 15.4(a);

18

*Goldstein v. Moatz*, 364 F.3d 205, 210 n.6 (4th Cir. 2004). In this case, the Acting United States Attorney for the District of South Carolina certified that Peppers and Merchant were "acting within the scope of their employment at the time of the incident alleged in the complaint." J.A. 32. And while "the Attorney General's Westfall Act scope-of-employment certification is subject to judicial review," *Osborn v. Haley*, 549 U.S. 225, 230 (2007), Lusk does not contest that certification in this appeal.

The long and the short of it is that any common-law claims Lusk may seek to bring related to the alleged assault and battery must be brought against the federal government, pursuant to the Westfall Act. Yet they cannot be brought against the federal government, because the FTCA does not waive sovereign immunity in this circumstance. And while the Westfall Act does not preclude a constitutional claim, *Bivens* provides no remedy to Lusk—or to almost any plaintiff, in light of the Supreme Court's parsimonious understanding of that case. This combination of statutes and precedents sends a plaintiff like Lusk directly from the arms of Scylla to the mouth of Charybdis.[11]

The result is quite harsh and rather shocking: A plaintiff who alleges that she was physically assaulted by a postal worker has no recourse against that worker in a civil lawsuit in state or federal court, so long as the government certifies that the worker was

---

[11] There is another limitation, too: "a plaintiff who pursues *both* [*Bivens* and FTCA] remedies runs the risk that the constitutional claim will be subject to the FTCA's 'judgment bar' provision," which "provides that an FTCA judgment is a 'complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.'" *Longworth v. Mansukhani*, 134 F.4th 755, 757 (4th Cir. 2025) (some alterations and internal quotation marks omitted) (quoting 28 U.S.C. § 2676).

19

acting within the scope of their employment. But whether that outcome makes sense as a policy matter is a question for the legislative branch. We must leave to Congress whether it is wise for sovereign immunity to blanket all federal employees with such total legal protection.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

20